Mr. Justice Walker delivered the opinion of the Court. This is an action of trover, in which the plaintiff, to recover, must prove property in himself, and a right of possession at the time of the conversion by the defendant; (2) a conversion by the defendant; (3) the value of the property. The whole contest relates to the title to the property: the proof on the other point is not questioned. There can be no doubt from the evidence but that the plaintiff, whilst a minor, was engaged by his father in canning the mail, in consideration of which he gave to the plaintiff the boy in dispute. It is contended by the defendant that this was a gift, and in order to make it a valid gift possession must at the time accompany it. It is true that, in the manner of conferring title, this transaction seems to have been treated as a gift, but the evidence, taken altogether, makes it rather a payment or satisfaction for services rendered ,by the son for the father (who it is admitted had a right to command his son’s services) but who voluntarily promised him, in advance of the services, a negro boy for their performance. This agreement seems to have been consummated by the performance of the services on the part of the son, and the purchase of the slave in dispute for his son, and passing him over by express declaration that the boy was his son’s and given in consideration of such services. If we treat this as a sale, the right to possession passed with the sale, and title was perfect without formal delivery. If, however, it be considered a gift, possession must accompany the gift in order to make it valid. The evidence brings this case fully within the decision of this court in the case of Dodd vs. McCraw, 3 Eng. 84, where it was decided that where an infant child resides with his father at the time the gift is made, and continues a member of his family, the possession will be presumed to be in the infant, the rightful owner, although the father exercise control over the slave and appropriate his labor. This question was fully discussed in that case, and will be regarded as decisive of this point. Title once acquired either by sale or gift is not divested by the mere fact that the purchaser or donee did not thereafter take the property into his exclusive possession, and appropriate it to his exclusive use. It is true that suffering the property to remain in the possession and control of the vendor, after sale, may in some instances, as regards subsequent creditors of the vendor, who contract with the vendor on the faith of the property thus abandoned to Ms use and apparent ownership, upon a question of fraud, be admissible. And so if the vendor or donor, at the time of the gift or sale, be in failing circumstances, prior creditors might well urge such circumstances in connection with others as evidence of fraud. But as the evidence in this case discloses neither subsequent creditors nor prior insolvency, the evidence adduced in regard to subsequent possession and acts of ownership must be restricted to the point as to whether in fact a sale or gift did take place, and if a gift, whether possession accompanied it at the time; for if it did, as before stated, subsequent possession and use by the donor could not defeat a title once acquired. As regards the admissibility of the judgment and execution thereon as evidence, it will be found, upon examination of that record, that the judgment was rendered upon a deliver^ bond upon motion and without notice to the obligors, and comes directly within the decision of this court in the case of McKnight vs. Smith, 5 Ark. R. 409, which has been re-affirmed b,y several subsequent decisions of this court, wherein it is decided that in such cases as this the judgment of the Circuit Court is void; consequently the purchaser at execution sale under it acquired no title to the property and the evidence should have been excluded. It is contended, however, that although this is a void sale, the plaintiff, a third person, who was present when the property was sold, silently acquiesced in the purchase of the property by the defendant, whereby he perpetrated a fraud upon the defendant. This doctrine will be found to restfor its support upon the principle of equitable estoppel, and the authorities referred to by the defendant’s counsel go far to sustain it; as where A purchases of B, in the presence of C, who, with a full knowledge of the facts, stands by and fails to make his title known, he is equitably estopped from setting up his own title against such innocent purchaser. It is very questionable, however, whether this rule applies to common law proceedings. In the case of Stoors and Booker vs. Barker, 6 John. Ch. R. 166, the doctrine is discussed at considerable length, referring to and reviewing a leading case in 1 J. C. R. 344. In the case in 6 Johnson tbe bill was for an injunction to stay an action at law in ejectment brought by Barker against Booker, to secure the possession of a tract of land held by Booker under a deed from Stoors. It appeal’s that one Foster conveyed by deed to Stoors; that, pending the negotiation and before the deed was made, Barker told Foster that his (Foster’s) title was good; he was also interrogated on behalf of Stoors before the purchase, whether he had or not a claim to the land, and answered that he had not, and advised Foster to sell and Stoors to buy. Three years after this sale and after valuable improvements had been made on the land with the knowledge and silent acquiescence oí Barker, he asserted title to this land himself, and sued in ejectment to recover it. Under these circumstances, if a case could be conceived where the doctrine could be made to apply so as to amount to affirmance of title in the purchaser, or to estop him from setting up his legal title, it should have been done here; and yet in this case the chancellor, when referring to the case in 6 Term R., where Lord Mansfield is reported by Lawrence, J., to have said: “That he would not suffer a man to recover in ejectment who stood by and saw the defendant build on his land,”' said, however he might question the existence of such a rule in a court of law, yet in chancery it is a well established rule. And accordingly decreed that the plaintiff be enjoined from asserting his title at law. It seems clear to us, from the facts of this case and the decision of the court upon it, that, if the effect of this acquiescence in the purchase of an innocent purchaser without notice, could have oep rated as an estoppel at law, or have amounted to an affirmance of title, the Chancellor, instead of discrediting this anonymous opinion of Lord Mansfield, would at once have so pronounced the law to be. But the very fact that the Chancellor decreed against the exercise of this legal right, shows that without such equitable interposition he believed that the legal rights of the party (however fraudulent it might be) remained unimpared, and that in order to avail himself of this equitable defence he must resort to the proper tribunal in such cases for redress. But that this case may be presented under its own peculiar circumstances, we will proceed to examine it as connected with «other legal principles,-which apply to this class of sales, but which are inapplicable to sales generally. It will be remembered that this was a sheriffs sale in regard to which the principle of caveat emptor applies. Henderson vs. Overton, 2 Yerg. 394. Thayer & Stringer vs. The Sheriff of Charleston, 2 Bay Rep. 169. Hurley vs. Baker, 10 Mo. Rep. 157. And the same rule applies to sales by executors, administrators and other trustees. 2 Har. & Gill 176, Ch. on Con. 447. The case in 2 Yerger is not only an authority showing that the principle of caveat emptor applies, but there, as in this case, the judgment was declared void, and the claimant was not only present but bid for the property, and the court expressly held that the doctrine of equitable estoppel did not apply. We- are therefore of opinion that the mere presence of a third person at a sheriff’s sale, who has title to the property sold upon a void judgment, does not estop him from asserting his title at law to the property thus sold. It remains to be seen whether the plaintiff in this case was in fact present at the time the slave in suit was set up. and sold; for until he is proven positively to have been present at the time of the sale, no presumption of fraud .arises which could affect him even in a court of equity. It is a rule of evidence which lies at the foundation of all presumptive evidence or deduction from facts that the facts themselves from which these presumptions arise must be clearly and satisfactorily proven. For if such were not the case it would be but raising presumption upon presumption, whereas the very existence of presumptions depends upon their usual and necessary connection with known facts. It is by the application of this rule that a third person who is present when property to which he has claim is offered for sale, and who stands by in silence and suffers an innocent purchaser to pay his money for it, is chargeable with fraud. When it is clearly proven that he was present at the time of the sale, and so situated that he must have been advised of the fact that his property was about being- sold, and he remains silent, a presumption of intention to defraud the purchaser arises and attaches to his conduct. But then in order to raise this presumption, it must be first positively proven that he was present at the very time the sale of that particular property took place. When these rules are applied to the evidence in this case it will be found that there is no positive proof that the plaintiff was present when this particular slave was sold. Most of the witnesses have no positive recollection that he was there at any time, but are of the impression that he was. One witness only says he was there certainly. That witness says “I do not know whether plaintiff was present when the negro sued for was sold or not, but I saw him when the sheriff was selling, some time during the progress of the sale of the ne-groes under execution against my father. They were some time selling the whole lot of negroes — some nine or ten in number.’’ Therefore under no state of case can the plaintiff be affected by this principle, as the proof fails to establish the fact of his presence at the time of the sale of the boy in suit. The judgment of the court below must therefore be reversed, and a new trial must be awarded.